FRANCES LEATHERS, Petitioner for Annulment of decree of divorce,

*vs.*

ELIZABETH SMITH STEWART.

Somerset.    Opinion March 3, 1911.

*Divorce.    Decree.    Annulment.    Fraud.    Equity.    Laches.    Evidence.    Revised Statutes, chapter 62, section 4; chapter 79, section 17.*

1.   When a libellant in a libel for divorce falsely alleges on oath in the libel that the residence of the libellee is unknown to him and cannot be ascertained by reasonable diligence, and thereupon constructive notice to the libellee by publication is ordered and given, the apparent jurisdiction thus induced by fraud is colorable only.

2.   The decree of divorce made in such a case may be vacated and annulled on petition of the defrauded party, though the libellant may have contracted a new marriage, or may have died, since the divorce was decreed.

3.   On hearing a petition for the amendment of a decree of divorce exceptions lie to rulings in law, though the right of exception was not expressly reserved before the hearing.

4.   On hearing a petition for the annulment of a decree of divorce, exceptions lie to a ruling that the petitioner is not barred by laches.

5.   While the doctrine of laches is to be applied upon legal principles, the application is nevertheless so far a matter of discretion, dependent upon the facts in the case, that a ruling thereon will not be disturbed unless

shown to be clearly wrong. Upon the record before the court the ruling that the petitioner is not barred by laches is not shown to be erroneous. The evidence is not before the court.

6. "Laches" is negligence or omission reasonably to assert a right. It exists when the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and when it would be inequitable to enforce the right.

7. When the evidence is not made a part of the findings of the presiding Justice, nor of the bill of exceptions, it is not a part of the record, and cannot be considered, on exceptions, even if a part or all of it be printed with the case.

8. On hearing a petition for the annulment of a decree of divorce the answer of the respondent is not evidence of the facts stated therein.

On exceptions by defendant.    Overruled.

Petition for the annulment of a decree of divorce made in Maine in 1894, on the libel of the petitioner's husband, Llewellyn L. Leathers.

The case is stated in the opinion.

*Gould and Lawrence*, for plaintiff.

*David D. Stewart*, for defendant.

SITTING :   WHITEHOUSE, SAVAGE, SPEAR, KING, BIRD, JJ.

SAVAGE, J.   This is a petition for the annulment of a decree of divorce, which was made in this State in 1894, on the libel of the petitioner's husband, Llewellyn L. Leathers.   The material allegations, so far as it is necessary to notice them, are, in substance, that the petitioner was never served with personal notice of the pendency of the libel, and had no knowledge thereof until after the divorce was decreed ; that her husband falsely and fraudulently alleged in his libel, under oath, that he had made inquiries and could not by reasonable diligence ascertain the residence of the libellee, the present petitioner, and that her residence was unknown to him ; that thereupon constructive notice by publication was ordered and given, that by reason of the false and fraudulent allegation as to residence, the court did not acquire jurisdiction to decree a divorce as against the petitioner ; and that the decree was, and is, null and void.   It is also alleged that after the decree was entered, a marriage ceremony

was performed between Leathers and the respondent, who was then Elizabeth Smith, and that subsequently Leathers died, in 1903. The petition is dated November 4, 1909.

After due notice, the respondent appeared and filed an answer to the petition. After a hearing the presiding Justice made the following findings of fact and rulings in law :

"The petitioner was married to one Llewellyn L. Leathers in 1861 in Minneapolis, Minnesota, and lived there with him until May 16, 1891, when he left her and came to St. Albans, Maine, leaving her at Minneapolis in the house where they were then living. Mr. Leathers, the husband, filed in the Supreme Judicial Court foɪ Somerset county, at the September Term, 1894, a libel, dated Aug. 9, 1894, for divorce from the petitioner Frances, alleging cruel and abusive treatment as a cause. In the libel Mr. Leathers alleged on oath that the residence of his wife Frances was unknown to him, that he had made inquiries, and could not by reasonable diligence ascertain her residence. Upon this libel and allegation he obtained an order of notice upon his wife by publication in the Pittsfield Advertiser, a local paper of limited circulation. At the following December Term, 1894, the notice by publication was proved as ordered, a hearing had and a decree of divorce made and entered. No other notice was attempted to be given, and the wife had no notice whatever of the libel and decree until some years afterward, in 1897 or 1898.

"Mr. Leathers's said allegation as to the residence of his wife was false and was made for the purpose of preventing his wife having any notice of the libel. He did know his wife's residence or at least knew perfectly well how to find it.

"Some two months after the decree of divorce, Mr. Leathers married the respondent Elizabeth Smith Stewart, who had lived as a domestic in his family in Minneapolis, and lived with her in St. Albans till his death there in 1903, but had no children by her. The respondent was aware of his intention to procure the divorce, and her affidavit in support of the allegation of cruel and abusive treatment was filed in the case. There was no evidence that she instigated

the making of the false affidavit as to the residence of the wife, but she had reason to believe that it could have been easily ascertained.

"Mr. Leathers died in 1903, and the respondent was appointed administratrix upon his estate, and the personal estate was awarded to her as the widow's allowance, in 1903.

"The petitioner, though aware as early as 1898 of the decree of divorce and of the marriage ceremony of Mr. Leathers with the respondent, did not file any petition for the annulment of the decree of divorce until Nov. 13, 1909, before which time not only had Mr. Leathers died, but his counsel (Mr. Josiah Crosby) in the divorce proceedings, and the Justice (Justice WISWELL) who granted the decree, had also died. She did not allege nor prove that the petition could not have been filed earlier.

"Personal service of this petition for annulment was made upon the respondent as claiming to be the widow of Mr. Leathers, but no service was ordered or made on her as administratrix of Mr. Leathers. The only children and heirs of Mr. Leathers are two sons of himself and the petitioner, of age, and who acknowledge notice of the pendency of the petition and make no objection.

"Mr. Leathers was honorably discharged from the military service of the United States and drew a pension as such. His legal widow is entitled to a pension on his account.

"At the hearing the respondent appeared by counsel and filed an answer, not under oath and signed only by her attorney, but did not testify.

"I rule that the answer is not evidence of any statements made therein.

"I further rule that the petitioner is not barred by laches."

A decree of annulment was made.

The facts found by the court below disclose a clear case of fraud upon the rights of this petitioner, and gross imposition upon the court which granted the divorce. By the libellant's false and fraudulent affidavit in the libel as to the libellee's residence and to the inability to ascertain it by reasonable diligence, the court was induced to assume a jurisdiction which it did not in reality possess. R. S., ch. 62, sect. 4, declares that "when the residence of the libellee

can be ascertained it shall be named in the libel, and actual notice shall be obtained, · · · When the residence of the libellee is not known to the libellant, and cannot be ascertained by reasonable diligence, the libellant shall so allege on oath in the libel." And it is only in the latter case that the court has jurisdiction to order constructive notice to the libellee by publication. And unless it be proved at the hearing that the sworn allegations in the libel as to the residence of the libellee are true, the court has no jurisdiction, for want of proper notice, to decree a divorce. The apparent jurisdiction thus induced by fraud is colorable only.

And no doubt exists that in such cases the court may, and in proper cases should, vacate the decree of divorce on the petition of the defrauded spouse. *Spinney* v. *Spinney*, 87 Maine, 484; *Lord* v. *Lord*, 66 Maine, 265. And this may be done though the libellant has contracted a new marriage since the first one was dissolved. *Holmes* v. *Holmes*, 63 Maine, 420; 14 Cyc. 719. So, by the great weight of authority, the power is sustained, in cases where property rights are involved, though the libellant has since died. See note to *Lawrence* v. *Nelson*, 57 L. R. A. 583; 14 Cyc. 719.

This case comes up on the respondent's exceptions "to the rulings of law, particularly to those relating to the laches of the petitioner." The evidence was not made a part of the findings of the presiding Justice, nor was it made a part of the bill of exceptions. The respondent has had a part, at least, of the evidence printed with the case. But not having been made a part of the bill of exceptions, it cannot be considered. *Jones* v. *Jones*, 101 Maine, 447.

In the first place, the petitioner contends that the respondent's exceptions should be dismissed, on the ground that it does not appear that the right of exception was expressly reserved before the hearing. She cites *Frank* v. *Mallett*, 92 Maine, 77. The point taken is not tenable. The rule relied upon applies only to jury-waived cases. It does not apply to cases, like the present one, which can only be heard by the court alone. In the latter class of

cases exceptions lie to rulings in law, although the right is not expressly reserved in advance.

The court below ruled that the answer of the respondent was not evidence of the facts stated therein.   In support of the exception to the ruling the learned counsel for the respondent seems to rely upon the old rule in equity practice, that an answer to a bill in equity is evidence.   By the old practice the bill called for an answer under oath, and it was held that the answer was evidence and that it took the equivalent of two witnesses to overcome such an answer.   But even if the rules of equity practice were applicable to a case like this one, the respondent's position could not be sustained.   Answers, even under oath, when an answer under oath is not called for by the bill, are not evidence.   *Clay* v. *Towle*, 78 Maine, 86 ; R. S., ch. 79, sect. 17.   Here no answer was called for by the petition, and the answer filed was not under oath.   But this is not a bill in equity, and we think the rules of equity procedure do not apply. The answer merely serves to mark out the issues, as well as to limit them.   It is in no sense evidence.   It is no more evidence than is a brief statement pleaded under the general issue.   The ruling was right.

Upon the exception to the ruling that the petitioner is not barred by laches, two questions arise.   First, do exceptions lie ?   It is contended by the petitioner that the ruling was one of discretion, to which exceptions do not lie.   We think otherwise.   Laches is negligence or omission seasonably to assert a right.   It exists when the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and when it would be inequitable to enforce the right.   The circumstances in a given case which are claimed to constitute laches are, of course, questions of fact.   But the conclusion whether upon the facts it would be inequitable to enforce the right, and whether the claimant is barred by laches, involves a question of law.   In proceedings in equity in which the doctrine of laches has been developed, it is commonly held that the defense of laches may be raised by demurrer, that is, assuming the facts stated in the bill to be true, the bill is

not maintainable, *as a matter of law*, because of laches. *Taylor* v. *Slater*, 21 R. I. 104; *Meyer* v. *Saul*, 82 Md. 459; *Coryell* v. *Klehm*, 157 Ill. 462; *Kerfoot* v. *Billings*, 160 Ill. 563; Whitehouse Eq. Practice, sect. 331.

Nevertheless, the decision of the court upon the question of laches is so much a matter of discretion, dependent upon the facts in the case, that it should not be disturbed on appeal or exceptions unless clearly shown to be wrong. 12 Ency. of Pleading and Practice, 840.

The only fact contained in the court's findings which could be a ground for the application of the doctrine of laches is the lapse of time between the discovery of the fraud and the filing of this petition. But mere lapse of time is not enough. "The true doctrine concerning laches," says the author of Pomeroy's Equitable Jurisprudence, Vol. 5, sect. 21, "has never been more concisely and accurately stated than in the following language," used by the Rhode Island court:— "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right." *Chase* v. *Chase*, 20 R. I. 202.

In this case the second marriage occurred about two months after the divorce, and years before the petitioner had any knowledge of the fraud. The delay of the petitioner, after discovery, was in no sense responsible for this change of condition of the respondent. Moreover, the respondent had been a domestic in the family of Leathers before he abandoned the petitioner, and her connection with the divorce proceedings was such as to suggest that she was not an entirely innocent party, and that she was cognizant of the fraud.

But however this may be, it is incumbent upon her now to show that the ruling was clearly wrong. We are limited by the record. And the record before us fails to show that the Justice who heard the case did not exercise the discretion vested in him wisely and according to legal principles.

*Exceptions overruled.*