*Claudia Natalie Cabrera v. Cecilia R. Penate, et al.*, No. 110, September Term 2013

**ELECTION LAW — JUDICIAL RELIEF —** Maryland Code (2002, 2010 Repl. Vol.), § 12-202 of the Election Law Article grants standing to bring a claim that a putative candidate for office does not meet the requirements of candidacy, including the party affiliation requirement of § 5-203 of the Election Law Article. A claim regarding candidacy "relates to" an election.

**ELECTION LAW — CANDIDATE'S PARTY AFFILIATION —** A putative candidate for office must meet the party affiliation requirement of § 5-203 at the time he or she tenders for filing the certificate of candidacy stating his or her intention to run for office.

Circuit Court for Prince George's County
Case No. CAL14-05489
Argued: April 30, 2014

IN THE COURT OF APPEALS
OF MARYLAND

No. 110

September Term, 2013

CLAUDIA NATALIE CABRERA

v.

CECILIA R. PENATE, ET AL.

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Barbera, C.J.

Filed: June 20, 2014

Claudia Natalie Cabrera, Appellant before this Court, wished to seek the nomination of the Maryland Democratic Party for the office of delegate in the June 2014 gubernatorial primary election. When Appellant tendered for filing the certificate of candidacy expressing her intention to run in the election, she was a registered member of the Republican Party, but affirmed that she was a Democrat.

Cecilia R. Penate, one of the Appellees before this Court, is a registered voter in the legislative district that Appellant sought to represent. She filed a petition in the Circuit Court for Prince George's County challenging Appellant's candidacy. About the same time, the Maryland State Board of Elections (the "State Board") sent to Appellant, through counsel, a notice of its intention to exclude Appellant's name from the primary election ballot, citing the fact that she was not affiliated with the Democratic Party.

After a hearing, the Circuit Court declared Appellant's candidacy invalid and ordered the State Board and Prince George's County Board of Election Supervisors (the "County Board"), the other Appellees before this Court, to exclude Appellant's name from the primary election ballot. In an order dated May 1, 2014, we affirmed the ruling of the Circuit Court. In this opinion, we explain the reasons for our conclusion that a registered member of one political party may not file a valid certificate of candidacy declaring the intent to run in the primary election of another political party.

I.

Appellant tendered for filing the certificate of candidacy with the State Board, requesting that her name be placed on the ballot in the June 24, 2014, gubernatorial primary

election, on February 25, 2014, the deadline to do so.  She sought the nomination of the Democratic Party for the office of delegate representing District 47B, located in Prince George's County.

On the certificate of candidacy, Appellant listed her address as 2528 Metzerott Road, Adelphi, Maryland, a residence located within District 47B.  In fact, on February 25, 2014, Appellant resided outside of District 47B.  She intended, at some time in the future, to move to the Metzerott Road residence; she moved in March 2014.

Pertinent to this appeal, on the certificate of candidacy, Appellant listed her party affiliation as "Democratic."  On the date she filed the certificate of candidacy, however, Appellant was a registered member of the Republican Party.  Two days later, on February 27, 2014, Appellant filed with the State Board a voter registration application form, changing her party affiliation to Democratic.[1]

On March 4, 2014, Penate, a resident and registered voter in District 47B, filed in the Circuit Court for Prince George's County a petition challenging Appellant's certificate of candidacy, naming Appellant, the State Board, and the County Board as respondents.  Penate

---

[1] From the record in this case, the reason for Appellant's affirmation that she was a registered Democrat remains unclear to this Court.  As of 2001, Appellant had been a registered Republican.  On January 29, 2014, she affirmed that her party affiliation was Republican on a voter registration application form she submitted for the purpose of changing her address.  She did not file the form to change her party affiliation until February 27, 2014.  We are unsure how Appellant could have been under the impression on February 25 that she was a registered Democrat.  In her brief and during oral argument, Appellant characterized this act as "error," "mistake," or the product of oversight.

brought the petition, initially, pursuant to Maryland Code (2002, 2010 Repl. Vol.), § 5-305

of the Election Law Article,[2] which permits a "challenge [to] the candidate's residency as

provided in § 5-202." Section 5-202 states that a candidate for office "must be a registered

voter at an address that satisfies any residence requirement for the office that is imposed by

law . . . ." Penate asserted that Appellant did not meet the residency requirement imposed

by Article III, § 9 of the Constitution of Maryland, which requires that a delegate reside in

the district he or she seeks to represent for at least six months prior to the date of his or her

election.

On March 18, 2014, Penate amended her petition, adding a claim pursuant to § 12-

202, which provides, in relevant part:

> (a) If no other timely and adequate remedy is provided by this article, a
> registered voter may seek judicial relief from any act or omission relating to
> an election, whether or not the election has been held, on the grounds that the
> act or omission:
>    (1) is inconsistent with this article or other law applicable to the
> elections process; and
>    (2) may change or has changed the outcome of the election.

Specifically, Penate argued that Appellant did not meet the party affiliation requirement of

§ 5-203, which provides, in relevant part:

> (a)(2) Unless the individual is a registered voter affiliated with the political
> party, an individual may not be a candidate for:
>    (i) an office of that political party; or

---

[2] All statutory references hereinafter are to the 2010 Replacement Volume of the
Election Law Article, unless otherwise noted.

(ii) except as provided in subsection (b) of this section,[3] nomination by that political party.

As Appellant was a registered member of the Republican Party at the time she submitted her certificate of candidacy for the Democratic Party nomination in the primary election, Penate argued, Appellant's candidacy in that election was invalid.

On March 20, 2014, the State Board Administrator sent Appellant's counsel a "notice of proposed action," advising that, subject to any contrary ruling by the Circuit Court in the pending litigation, the State Board would remove Appellant from the primary election ballot. The notice explained:

Section 5-203(a)(2) . . . requires that any individual seeking nomination by a political party to a seat in the House of Delegates must be a registered voter affiliated with that political party. The State Board of Elections is required to determine whether individuals filing a certificate of candidacy meet the voter registration and party affiliation requirements of Title 5, Subtitle 2 of the Election Law Article. *See* EL § 5-301(b)(1).

According to State Board records, [Appellant] was not a registered voter affiliated with the Democratic Party as of the candidate filing deadline of 9 p.m., Tuesday, February 25, 2014.

The Circuit Court held a hearing on Penate's petition on March 21, 2014. The parties made arguments concerning whether Appellant satisfied the residency requirement, but Appellant argued, preliminarily, that Penate did not have standing to bring a challenge based on the party affiliation requirement. Appellant stated that nothing in § 5-305 provides for a

---

[3] Subsection (b) specifies that the party affiliation requirement does not apply to candidates for judicial office or a county board of education.

challenge to party affiliation. After counsel for Penate responded by explaining that § 12-202 explicitly provides a remedy where there is no specific right to challenge a certificate of candidacy, Appellant argued that § 12-202 does not "create[] a catch-all provision." Further, Appellant argued, there is no private right of action by which to challenge party affiliation, as, under § 5-301, it was the "responsibility" of the State Board at the time Appellant submitted her certificate of candidacy to review it for correctness before accepting it. The Circuit Court denied Appellant's motion to dismiss the petition, concluding that Penate could seek judicial relief under § 12-202.

As to the merits of the party affiliation claim, Appellant argued that, although the deadline to file a certificate of candidacy for the 2014 gubernatorial election is much earlier in 2014 than in past election cycles, the deadline for changing party affiliation remains fixed with respect to the primary. Section 3-303 states that a voter's request to change party affiliation will be processed "at any time that registration is open." Under § 3-302, voter registration closes "beginning at 9 p.m. on the 21st day preceding an election." Thus, Appellant asserted, she had until June 3, 2014—months after the deadline to file a certificate of candidacy—to change her party affiliation to Democratic. Remarking that the party affiliation change statute is found in the title of the Election Law Article governing *voter* registration, the Circuit Court warned Appellant against confusing deadlines for voters and for candidates. In response, Appellant asserted that "[n]othing in the statute distinguishes between them." Indeed, Appellant argued, putative candidates need not satisfy all of the

requirements of candidacy at the time of filing the certificate of candidacy. Imposing such

a requirement effectively would "read out" the residency deadline of Article III, § 9.

The State Board and County Board agreed with Penate that the deadline for putative

candidates to fulfill the requirements of candidacy is the time of filing the certificate of

candidacy, not the § 3-303 deadline, for the reason that election authorities need certainty as

to whom to list on ballots for accuracy review and printing/mailing purposes, among others.

Under various state and federal statutes, election ballots must be certified, § 9-207, and

transmitted to absentee voters, 42 U.S.C. § 1973ff-1(a)(8)(A), well before June 3. It would

therefore be impracticable to permit candidates to switch party affiliation after the deadlines

set by those statutes.

At the conclusion of the hearing, the Circuit Court reserved judgment on the matter

of residency but ruled that Appellant's certificate of candidacy was null and void "on the

ground[] that she was not a member of the [Democratic] party at the time of the filing of the

[c]ertificate of [c]andidacy." On March 26, 2014, the Circuit Court issued its order with an

accompanying memorandum opinion. With respect to the residency requirement issue, the

court ruled that Appellant fulfilled the constitutional residency requirement.[4] The court then

explained more fully its decision with respect to party affiliation:

> Satisfaction of party affiliation is a prerequisite of the [c]ertificate of
> [c]andidacy. See Md. Election Law 5-203. To hold otherwise would require

---

[4] By not commenting further on this point in our opinion, we should not be
understood to agree with the trial judge's reasoning or ruling on the residency issue.

-6-

turning on head the oath that a candidate takes in the certificate of candidacy which requires under Md. Election Law that the candidate is a registered voter affiliated with the political party.

*** 

[Appellant] has not argued or cited any other provision of the law that would permit the court to excuse her late February 27, 2014 change of party affiliation to cure this defect in her certificate of candidacy.

*** 

Requirements are there, as counsel for the County Board stated, for "full, fair and effective elections"; this is one the court cannot excuse nor turn a blind eye. Clearly, at the time of her certificate of candidacy [Appellant] was not a Democrat; therefore [Appellant] did not meet the requirements of the office, delegate to the General Assembly for District 47B under Md. Election Law 5-203 (2).

Pursuant to § 12-203(a)(3), Appellant appealed to this Court the Circuit Court's decision as to the party affiliation issue only. We heard oral argument on April 30, 2014, and, the following day, entered a per curiam order affirming the judgment of the Circuit Court. We now explain our reasons for that decision, addressing in turn Appellant's arguments regarding the actions of the Circuit Court and the State Board.

II.

We review *de novo* the decision of the Circuit Court, insofar as it rested on the interpretation of the Election Law Article. *Falls Road Cmty. Ass'n, Inc. v. Baltimore Cnty.*, 437 Md. 115, 134 (2014) (citing *Forster v. Office of the Public Defender*, 426 Md. 565, 579 (2012)).

*Standing Under § 12-202*

Before this Court, Appellant first argues that the Circuit Court erred in considering Penate's challenge brought under § 12-202, maintaining that the statute does not grant

-7-

standing for party affiliation claims. On its face, Appellant argues, § 12-202 does not create a remedy to address challenges to a candidate's qualifications, but rather, only claims based on "an act or omission relating to an election," thereby drawing a distinction between claims "regarding candidacy" and those "regarding elections themselves."[5]

Penate, naturally, takes the contrary position that § 12-202 plainly contemplates the type of challenge she raises to Appellant's certificate of candidacy. She argues that the purpose of § 12-202 is to create a mechanism for obtaining relief where none is otherwise available, and no provision of the Election Law Article explicitly provides for a challenge to a putative candidate's party affiliation. Penate asserts that the certification of a candidate is assuredly an act relating to an election, dismissing Appellant's attempt to distinguish between "election-related" and "candidacy-related" claims.[6]

In support of her argument that § 12-202 is the appropriate mechanism by which to bring a party affiliation challenge, Penate cites *Ross v. State Board of Elections*, 387 Md. 649 (2005). In *Ross*, the losing candidate for a seat on the Baltimore City Council filed a petition in the Circuit Court for Baltimore City seeking to enjoin the City Board of Canvassers from

[5] Candidacy-related matters are set forth in Title 5 of the Election Law Article. Appellant asserts that the only candidacy-related claim provided for by Title 5 is the challenge to a putative candidate's residency under § 5-305.

[6] Penate accepts that candidacy-related claims comprise a distinct class only for the sake of arguing that such claims are not contained exclusively in Title 5 of the Election Law Article, citing § 9-209—clearly, not contained in Title 5—which "provides a mechanism by which a voter may contest the inclusion [on a ballot] of the name of a candidate who is not certified by the State Board or the exclusion of the name of one who is certified." *Ross v. State Bd. of Elections*, 387 Md. 649, 667 (2005).

certifying the results of the election, arguing that the winning candidate had been delinquent in filing campaign finance reports as required by § 13-304. 387 Md. at 654-56. The winning candidate and State Board asserted that the losing candidate was barred from contesting the results of the election by the time limitations contained in §§ 9-209 and 12-202. *Id.* at 656-57. The Circuit Court granted summary judgment against the losing candidate on the ground that his claim was untimely under § 9-209, which provides for a challenge to the "content and arrangement of [a] ballot" within three days of the public display of that ballot. *Id.* at 657.

On appeal, this Court held that the Circuit Court had erroneously granted the motion for summary judgment in reliance on § 9-209. 387 Md. at 653. We determined that the errors subject to judicial review under § 9-209 "are confined to the various characteristics of the ballot, not the qualifications or lack thereof of the candidates." *Id.* at 665. A candidate's ineligibility to participate in an election, we concluded, could not properly be considered in a § 9-209 challenge. *Id.* at 666. Rather, we stated, the losing candidate's petition "was governed by Section 12-202 of the Election Code, which provides for . . . judicial redress for an act or omission that violates the Election Law Article and has or would change the outcome of the election . . . ." *Id.* at 667-68. In *Ross*, like here, we considered whether a claim regarding candidacy "relat[es] to" an election, and we held that it does.

Just as *Ross* demonstrates the type of claims that may be brought under § 12-202, so, too, does *Abrams v. Lamone*, 398 Md. 146 (2007). In *Abrams*, we reviewed the grant of a motion for summary judgment in an action filed under §§ 9-209 and 12-202, seeking an order

-9-

declaring that a putative candidate for Attorney General did not possess the requisite qualifications for that office. 398 Md. at 156-57. Noting that the Circuit Court found that the § 9-209 "ground did not apply," *id.* at 159 n.17, the plurality opinion of this Court summarized the Circuit Court's ruling on the timeliness of the action under § 12-202. *Id.* at 159-60. Evidently, there was no controversy as to whether the appellant in the case had standing under § 12-202 to challenge the candidate's qualifications.

Our cases thus show that § 12-202 is the mechanism for challenging the qualifications of a candidate seeking election. Moreover, it strains credulity to entertain the argument that the inclusion of a candidate on an election ballot is *not* "relating to an election." To the extent it was not previously clear, we hold that § 12-202 permits the type of claim Penate brought in the instant case: a challenge to the qualifications of a putative candidate. The Circuit Court did not err in considering Penate's challenge under this statute.

Appellant submits that, for another reason, there is no right on the part of an individual registered voter to challenge the qualifications of a putative candidate. She argues that the responsibility of the State Board under § 5-301(b)[7] to "determine whether an individual filing a certificate of candidacy meets the requirements of [the Election Law Article], including . . . the voter registration and party affiliation requirements under Subtitle 2 of this title," functions at the exclusion of a private right of action. Appellant explains what she perceives to be the logic of this scheme: the State Board, which maintains voter

[7] A similar requirement also appears in § 5-304(e).

-10-

registration records, is in the best position to verify a candidate's party affiliation; the same is not true for verifying residency, and, accordingly, the Election Law Article provides for individuals to bring residency challenges under § 5-305.

Appellant misinterprets the charge of §§ 5-301(b) and 5-304(e). The State Board's "responsibility" does not preclude the existence of a private right of action. This proposition is borne out by our past cases, in which individuals challenged candidate qualifications the State Board had an independent obligation to verify. *Ross* provides an example. We did not decide in that case whether there was a private cause of action under § 12-202 because we had concluded that Ross's claim was barred by the doctrine of laches, yet, in stating that the appellant's claim was governed by § 12-202, we suggested that a private cause of action exists for challenging candidacy based on alleged violations of the campaign finance reporting requirements of the Election Law Article. 387 Md. at 667-68. We conclude here that the function of an elections board to determine whether a putative candidate fulfills the requirements of the office he or she seeks does not bar an individual registered voter from bringing a claim pursuant to § 12-202.

It is important to specify the precise "act or omission relating to an election" under consideration here. Penate initially filed her petition pursuant to § 5-305, which permits an individual to "challenge the candidate's residency." She cast her amended petition in the language of § 5-305, although, of course, she brought that challenge pursuant to § 12-202: "[Penate] hereby files the instant petition challenging the . . . political affiliation identified

-11-

on the [c]ertificate of [c]andidacy of [Appellant] . . . ." She asked the Circuit Court to "declare[] invalid" Appellant's certificate of candidacy. We infer, then, that the "act or omission relating to an election" from which Penate sought judicial relief was the filing of the certificate of candidacy, not any act on the part of the State Board or County Board. This falls within the ambit of § 12-202.[8]

*Stating a Claim Under § 12-202*

Appellant further argues that, even assuming that § 12-202 is the appropriate mechanism for bringing a party affiliation claim, in this case, Penate did not state or prove a cause of action under the statute. Appellant contends that, under *Suessmann v. Lamone*, 383 Md. 697, 714 (2004), the following four elements must be pleaded and proven to obtain relief under § 12-202: the absence of any other timely and adequate remedy; an act or omission relating to an election; a showing that the act or omission is unlawful; and a showing that the act or omission may change or has changed the outcome of an election. Appellant asserts that Penate neither pleaded nor proved those elements.

---

[8] At the time Penate filed her amended petition, the State Board had not yet taken any action regarding Appellant's certificate of candidacy. The State Board did not issue its notice of proposed action until March 20, 2014, well after the deadline for an individual to file an action under § 12-202. It is plausible, then, that the "act or omission" from which Penate sought relief was the failure of the State Board, as of March 4, 2014, to state its intention to exclude Appellant from the primary ballot, although we note that there is no time limitation imposed upon the State Board for determining whether a putative candidate satisfies all requirements of candidacy. In any event, it is clear that there was an "act or omission relating to an election" for Penate to challenge, given that a putative candidate's qualifications may be challenged under § 12-202.

-12-

Penate counters that the amended petition set forth three of the elements of § 12-202:

an act relating to an election ("certification of a registered Republican to be a Democratic

candidate"); a specific provision of the Election Law Article inconsistent with that act (§ 5-

203(a)(2)); and a showing that the act may change the outcome of the election (clearly,

Penate argues, certification of a candidate may change the outcome of the election, and she

was not required to plead this element *verbatim*, under principles of notice pleading). As to

the remaining element, Penate contends that Appellant has conceded the absence of any other

remedy, *i.e.*, that no provision of the Election Law Article explicitly provides for a challenge

to a putative candidate's party affiliation.[9]

In *Suessmann*, this Court discussed the requirement that a challenger show that the act

or omission "may change or has changed the outcome of an election." 383 Md. at 714-21.

In reviewing past cases, all of which required us to address claims that an act "*may have*

*changed*" the results of an election, we found our precedent to instruct that there is "a high

bar for satisfaction of § 12-202(a)(2)." *Id.* at 715-20 (discussing *Snyder v. Glusing*, 308 Md.

411 (1987); *Wilkinson v. McGill*, 192 Md. 387 (1949); *McNulty v. Bd. of Elections*, 245 Md.

1 (1966); *Pelagatti v. Bd. of Elections*, 343 Md. 425 (1996)). We clarified the standard for

satisfying this element of the statute: "To sustain a judicial challenge pursuant to § 12-202,

---

[9] Penate avers that Appellant did not allege that Penate failed to prove the elements of a § 12-202 claim and, accordingly, confines her argument to what she pleaded in the amended petition. We observe, however, that Appellant did allege that "Petitioner in the trial court proved ***none of these elements***." (Emphasis in original.)

the litigant must prove, by clear and convincing evidence, a *substantial probability* that the outcome would have been different but for the illegality." *Id.* at 720. The fact that the § 12-202(a)(2) demand "has real bite" is a reflection of the "entrenched common law policy against overturning elections in Maryland, a presumption from which this Court has never wavered and [of] which the Legislature has never given any indication of disapproval . . . ." *Id.* at 716-18.

All the cases we discussed in *Suessmann* involved challenges to elections that had already taken place, where challengers speculated that the outcome of the election would have been different if not for certain alleged illegality or error. In *Suessmann*, then, we interpreted the phrase "has changed the outcome of an election." On no prior occasion have we considered the meaning of "may change" as applied prospectively to an election that has not yet taken place, where our policy against overturning elections is not implicated. In *Suessmann*, we criticized the appellants for resorting to "pure speculation," 383 Md. at 721, yet, in cases such as this one, speculation is permissible and, indeed, necessary. There can be no doubt that the inclusion of a candidate on the ballot "may change" the outcome of an election. Appellant's mere presence on the ballot creates the possibility that she may win the election; her absence from the ballot assures that she will not.

We conclude that Penate satisfied this element of § 12-202, as well as the other elements of a § 12-202 claim. Penate alleged an unlawful act relating to an election, asserted that the act "may change" the outcome of that election, and showed the absence of any other

-14-

remedy for this illegality.

*Deadline to Meet the Party Affiliation Requirement*

As to the merits of Penate's challenge, Appellant asserts that the Circuit Court erred in declaring her candidacy invalid, arguing that she changed her party affiliation to Democratic in time to qualify as a candidate in the primary election. That court, she charges, erred in finding her change of party affiliation untimely under § 5-203, as the statute does not set a deadline by which the putative candidate must be affiliated with the political party whose nomination he or she seeks. In Appellant's view, the applicable law for determining the date by which a putative candidate must satisfy the party affiliation qualification is § 3-303, which permits voters to change party affiliation up until 21 days before an election.[10] She therefore submits that she had until June 3, 2014, to change her party affiliation to Democratic to qualify as a candidate in the Democratic primary.

As we have mentioned, pursuant to amendments to Maryland election law, *see* 2011 Md. Laws ch. 169, the 2014 gubernatorial primary election is to be held earlier in the year than in past election cycles: in June, rather than September. *See* Md. Code (2002, 2010 Repl. Vol., 2013 Supp.), § 8-201 of the Election Law Article. Likewise, the deadline to file a certificate of candidacy is earlier than in past election cycles: in February, rather than July. *See id.* § 5-303. In prior gubernatorial primaries, by the deadline to file a certificate of candidacy, both the deadline to change party affiliation and the deadline to establish

---

[10] *See supra* p. 5.

residency had passed. Appellant seizes upon this fact to support her argument that the deadline to file a certificate of candidacy is simply that: "a 'deadline to file.'" She asserts that the filing deadline could not have marked the moment at which a putative candidate was required to be a registered member of the party whose nomination she sought, for that moment had come and gone. Simply because the deadline to file a certificate of candidacy has shifted to a date prior to the party affiliation change deadline, Appellant argues, the filing deadline does not assume new significance, thereby "eras[ing]" the party affiliation change deadline from the Election Law Article.

Penate and the State Board[11] are in accord that § 5-203, by its plain language, is susceptible to one meaning only: a putative candidate must be affiliated with the political party whose nomination he or she seeks at the time of filing the certificate of candidacy. Penate and the State Board reject Appellant's argument that the § 3-303 deadline has applicability to candidates, charging Appellant with conflating the deadlines applicable to voters with those applicable to candidates.

Penate and the State Board point out that both § 5-304, which governs the manner of filing a certificate of candidacy, and § 5-203 are written in the present tense. Section 5-203 requires present party affiliation ("Unless the individual *is* a registered voter affiliated with the political party, an individual may not be a candidate . . . .") (emphasis added). Section 5-304(c) requires attesting to existent qualifications ("On the certificate of candidacy form

_____

[11] The County Board did not submit a brief to this Court.

. . . the candidate shall specify: . . . a statement that the individual *satisfies* the requirements of law for candidacy for the office for which the certificate is being filed . . . .") (emphasis added). Party affiliation, then, is a condition precedent to becoming a candidate in that party's primary; therefore, the State Board and Penate assert, a putative candidate may not fix the defects in a certificate of candidacy after the filing deadline has passed.

Finally, Penate and the State Board emphasize the unworkability, from an administrative standpoint, of permitting candidates to change party affiliation after submitting a certificate of candidacy. Preparing, certifying, and distributing election ballots for the June 24, 2014, primary, in compliance with the schedule set by various state and federal statutes, would be nigh impossible were June 3 the deadline to change party affiliation, as Appellant proposes. *See* § 9-207(a)(1) (requiring that the State Board certify the content and arrangement of ballots at least 42 days before a primary election in the year that the President of the United States is elected and at least 50 days before a primary election in any other year); 42 U.S.C. § 1973ff-1(a)(8)(A) (requiring that states transmit absentee ballots to an absent uniformed services voter or overseas voter not later than 45 days before the election if the absentee ballot was requested at least 45 days before an election for federal office).

In interpreting a statute, we are mindful that the aim of statutory construction "is to ascertain and effectuate the intent of the Legislature." *Stoddard v. State*, 395 Md. 653, 661 (2006) (quotation omitted). We have explained that, in determining the Legislature's intent,

we look first to the language of the statute, giving it its natural and ordinary meaning. . . . When the statutory language is clear, we need not look beyond the statutory language to determine the Legislature's intent. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written.

*Id.* (quotations and citations omitted).

We find the language of § 5-203 to express, quite clearly, its mandate. Accordingly, we hold that, to fulfill the party affiliation requirement of § 5-203, a putative candidate must be affiliated with the political party whose nomination he or she seeks *at the time of filing the certificate of candidacy*.[12]

Although Appellant asserts that the Election Law Article does not set out a deadline for a putative candidate to fulfill the party affiliation requirement, we find such a deadline expressed within the text of § 5-203 itself, as well as various other sections of Title 5, which governs "Candidates." § 5-203(a)(2) ("Unless the individual is a registered voter affiliated with the political party, an individual may not be a candidate for . . . nomination by that political party."); *see also* § 5-201; § 5-301(b); § 5-304(c)(5). Indeed, party affiliation is a condition precedent for candidacy in a primary election. § 5-601 ("The name of a candidate shall remain on the ballot and be submitted to the voters at a primary election if: (1) the candidate has filed a certificate of candidacy in accordance with the requirements of § 5-301

_____

[12] Penate argues in the alternative that a putative candidate must be affiliated with the correct party by the filing deadline, if not the moment at which he or she files the certificate of candidacy. In light of our holding, we need not address the alternative argument.

-18-

of this title and has satisfied any other requirements of this article relating to the office for which the individual is a candidate . . . .").

We therefore decline Appellant's invitation to declare, in the case of every primary election, that § 3-303 sets the deadline by which a putative candidate must be a member of the political party whose nomination he or she seeks. Title 3 of the Election Law Article governs "Voter Registration," and the function of § 3-303 is to permit a registered voter to change party affiliation at any time voter registration is open. § 3-303(a). The statute does not speak to the qualification requirements of a candidate for office. Section 3-303 does not apply to Appellant in her capacity as candidate.[13]

Appellant did not satisfy the candidacy requirements for the office she seeks, as she was a registered Republican at the time she filed her certificate of candidacy for the Democratic primary. The Circuit Court was correct in declaring her candidacy invalid.

III.

Finally, Appellant renews her argument that it was the responsibility of the State Board, under § 5-301(b)(1), to determine, at the time she tendered for filing her certificate of candidacy, whether she fulfilled all statutory and constitutional requirements for candidacy

_____

[13] We need not look far to find other examples of requirements that apply to an individual in her capacity as voter, but not as candidate, and vice versa. Section 3-304 permits a registered voter to change his or her address at any time voter registration is open. § 3-304(a)(2). This does not trump, however, the Article III, § 9 residency requirement for candidates.

-19-

and to advise her as to her options, given the party affiliation "problem."[14] She suggests that she should not be penalized, by removal from the primary ballot, for the State Board's failure to perform its duty.

Penate points out that this interpretation of § 5-301 is in conflict with Appellant's argument that a putative candidate need not satisfy the party affiliation requirement of § 5-203 until 21 days before the primary election. Penate reasons that Appellant cannot expect the State Board to determine conclusively, at the time of a putative candidate's filing the certificate of candidacy, whether he or she satisfies all requirements of candidacy, if months remain during which he or she may change party affiliation.

For its part, the State Board questions what would have prompted the election officer in receipt of Appellant's certificate of candidacy to give her any advice at all, in light of the fact that Appellant filed "a false affidavit" certifying, under penalties of perjury, that she was a registered Democrat. Whatever the duty of election officials, the State Board argues, the putative candidate is not excused from the duty to provide truthful and accurate information.

We reject Appellant's suggestion that the State Board lost or relinquished its authority because, immediately upon Appellant's filing her certificate of candidacy, the Board did not complete its determination of whether she satisfied the requirements of candidacy. As we

---

[14] Appellant suggests that the election official could have "(1) told [her] that she was a registered Republican and could not run in the Democratic primary; or (2) told [her] that in order to run in the Democratic primary, she needed to switch parties, which could have been done right then and there."

-20-

have stated, *supra* note 8, there is no time limitation imposed upon the State Board, under either § 5-301(b) or § 5-304(e), for determining whether a putative candidate satisfies all requirements of candidacy. The State Board thus "accepts" certificates of candidacy only provisionally. Indeed, by signing the certificate of candidacy, Appellant certified the following:

▸ I am a registered voter and a citizen of Maryland and meet all other requirements for the above listed office.
▸ I understand that my signature authorizes local boards to change all voter registration records except party affiliation.
▸ I understand that final acceptance of this certificate depends upon verification of the information provided by me.

Here, the State Board performed its statutory duty: in verifying the information Appellant provided on the certificate of candidacy, election officials discovered that she did not satisfy the party affiliation requirement and, consequently, sent notice to her counsel that her name would not be included on the Democratic primary ballot. As we have held, Appellant did not satisfy the candidacy requirements of the office she sought, and the State Board was correct in so concluding.[15]

For all the above reasons, we issued our May 1, 2014, order affirming the judgment of the Circuit Court.

---

[15] If needed, a lesson taught by this case is not to wait until the last minute to file anything.

-21-