*Linda H. Lamone, et al. v. Ian Schlakman, et al.,* No. 50, September Term, 2016.
Opinion by Greene, J.

**ELECTION LAW—TIME FOR PROCEEDINGS**

Notwithstanding the equitable nature of Appellees' claims, we may gauge their delay against the statutory limitations period because courts sitting in equity will apply statutory time limitations in determining, at least as an outside limit, whether laches has run. A statutory limitations period, such as that provided by ELEC. LAW § 12-202(b)(1), provides a benchmark for the application of laches against which this Court can assess whether the Appellees' delay in filing was unreasonable and whether it prejudiced the interests of Appellants. We hold that the temporary restraining order was granted in error because Appellees' state court challenges to the Boards' actions were untimely and are barred by laches. Appellees have not explained this delay, or explained why they did not institute a parallel action in the Circuit Court within the statutorily-mandated time limits.

Moreover, where the federal court dismissed Appellees' action because Appellee's counsel was not admitted to practice before that court, the savings provision under Maryland Rule 2-101(b) did not apply to toll Appellees' obligation to file in the appropriate circuit court, as instructed by ELEC. LAW § 12-202(b)(1).

Furthermore, Appellees have not demonstrated any basis for relief on the merits under any theory of action or avenue for relief. The plain language of ELEC. LAW § 5-703(d)(1) does not require candidates to submit the required filings until the first Monday in August preceding the General Election. The City Board's certification of Mr. Sparaco as a qualified candidate, and the State Board's listing of his candidacy, complied with the provisions of the Election Law Article.

IN THE COURT OF APPEALS

OF MARYLAND

_____

No. 50

September Term, 2016

_____

LINDA H. LAMONE, *et al.*


v.


IAN SCHLAKMAN, *et al*.

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Greene, J.

_____

Filed: February 1, 2017

This case involves a challenge under the election law article to a candidate's qualifications to appear on the ballot. *See* MD. CODE ANN., ELEC. LAW § 12-202(a) (2002, 2010 Repl. Vol., 2016 Supp.). Ian Schlakman and Frank Richardson (Appellees), along with Dan Sparaco, were among the candidates in the 2016 General Election vying for a seat representing Councilmanic District Twelve on the Baltimore City Council.[1] Appellees challenged the decisions of the Baltimore City Board of Elections ("City Board") to certify Mr. Sparaco as an eligible candidate and the State Board of Elections ("State Board") to include him as a candidate for the District Twelve seat on the 2016 General Election ballot. They maintained that Mr. Sparaco's failure to comply with statutory filing requirements in a timely manner disqualified him from running for election as a candidate for the District Twelve vacancy. Appellees sought to have the City Board withdraw its certification of Mr. Sparaco's candidacy and the State Board strike his name from the ballot. When the relief they sought was not forthcoming, Appellees went to court.

Appellees initially challenged Mr. Sparaco's qualifications in court by filing on August 25, 2016 an action against the State Board of Elections in the United States District Court for the District of Maryland, seeking an injunction "prohibiting . . . [the] State Board from violating Maryland Law" and other relief. The federal court dismissed

---

[1] For purposes of this opinion, we shall refer to Richardson and Schlakman as the "Appellees," and Linda H. Lamone, Administrator of the State Board of Elections, and Armstead B. C. Jones, Jr., Election Director of the Baltimore City Board of Elections, as "Appellants."

Appellees' lawsuit out of hand because then counsel had not been admitted to practice before the federal court.

On September 20, 2016, Appellees then filed the instant action in the Circuit Court for Anne Arundel County against Linda H. Lamone and Armstead B. C. Jones, Jr., in their official capacities as the Administrator of the State Board of Elections and Election Director of the Baltimore City Board of Elections, respectively. *See* MD. CODE ANN., ELEC. LAW § 6-209(a) (2002, 2010 Repl. Vol., 2015 Supp.); ELEC. LAW § 12-203(a)(3).

On September 22, after notifying the Boards' counsel, Appellees submitted an *ex parte* request for an immediate temporary restraining order. *See* Md. Rule 15-504. The Circuit Court granted the request on September 22 and issued the temporary restraining order directing Appellants to remove Mr. Sparaco's name from ballots and granting further relief. On September 23, Appellants filed direct appeals both to the Court of Special Appeals as well as this Court. *See* ELEC. LAW § 12-203(a)(3). On that date, this Court entered an order staying both the temporary restraining order and all further Circuit Court proceedings pending our review. On September 27, Appellants filed a "Petition for Certiorari and Request for Expedited Review." On October 6, we granted *certiorari*, before consideration of the direct appeal by the Court of Special Appeals. *Lamone, et al., v. Schlakman*, 450 Md. 214, 147 A.3d 393 (2016). We also allowed Appellants' request for expedited review and heard oral argument on October 18, following which we entered an order lifting the stay, vacating the temporary restraining order, and remanding the case

2

to the Circuit Court with instructions to dismiss the complaint. *Id.* The mandate issued

forthwith, and we now explain the reasons for our decision.[2]

## ISSUE

Appellants have advanced the following question for our review:

> Did the circuit court err in entering an *ex parte* temporary restraining order that requires the defendants to remove the name of a qualified candidate from the ballot in Baltimore City Councilmanic District No. 12 for the 2016 General Election?

For the reasons set forth below, we agree that the temporary restraining order was

granted in error. Appellees' state court challenges to the State Board's and City Board's

actions were untimely and are barred by laches. Moreover, Appellees have not

demonstrated any basis for relief on the merits under any theory of action or avenue for

relief. The City Board's certification of Mr. Sparaco as a qualified candidate, and the

State Board's listing of his candidacy, complied with the provisions of the Election Law

Article.

## BACKGROUND

The operative facts are not in dispute.[3] Ian Schlakman was the Green Party

candidate for the District Twelve Councilmanic seat on the Baltimore City Council.

---

[2] Although the election has been decided, this case is not moot, because "the issues properly presented, and their effects on independent [and petition] candidacies, will persist as the [Election Law is] applied in future elections." *See Storer v. Brown¸* 415 U.S. 724, 737 n. 8, 94 S. Ct. 1274, 1282 n. 8, 39 L.Ed.2d 714, 727 n.8 (1983). Moreover, our Order vacating the stay and remanding to the Circuit Court with directions to dismiss was issued on October 18, 2016, three weeks before the General Election.

[3] The various filing dates for the complaints, associated motions, court orders, and pre-election events are not in dispute.

Frank W. Richardson and Dan Sparaco were independent candidates for the same vacancy. By February 3, 2016, Appellees Schlakman and Richardson had each filed a declaration of intent or certificate of candidacy with the Baltimore City Board of Elections, filings that were required of them as part of the process by which each would qualify for a place on the ballot for the District Twelve seat. *See generally* ELEC. LAW §§ 5-301(a), (d); COMAR 33.01.06.01B (2) (definition of "candidate filing document" includes certificate of candidacy and declaration of intent).

Anticipating a run for the District Twelve seat, Dan Sparaco formed a candidate committee in September 2015, and filed his campaign finance report with the State Board of Elections on January 13, 2016. *See* ELEC. LAW § 13-202. He did not file his declaration of intent by February 3, however. Instead, on May 20, 2016, Mr. Sparaco filed suit in the United States District Court for the District of Maryland, challenging the constitutionality of the early filing deadline for unaffiliated candidates.[4] *Sparaco v. Lamone*, No. 1:16-cv-1579-GLR (D. Md). Mr. Sparaco voluntarily dismissed this suit on August 15, 2016.

On July 11, 2016, Mr. Sparaco filed with the City Board his declaration of intent to seek nomination by petition for the District Twelve seat. On August 2, the City Board

---

[4] Indeed, there is no dispute that the State Board had misstated the correct filing deadline when it posted that information on its website. Until August 26, 2016, its website misstated the deadline for filing the documents at issue as February 3, 2016. Appellees maintain that Mr. Sparaco's federal lawsuit prompted the Board to reconsider its view that the deadline for filing a declaration of intent and certificate of candidacy was February 3, 2016. The filing of this action in federal court and the reasons for its dismissal are not relevant to our consideration of the issues on appeal.

4

approved the petition signatures that had been submitted by Mr. Sparaco, and certified his candidacy pursuant to ELEC. LAW § 6-208(b)(1), which governed the certification of petitions.[5]  The State Board included Mr. Sparaco's name on the ballot and on August 31 posted on its website ballot proofs that included his name, as well as those of Appellees.

On August 25, 2016, Appellees filed suit in the United States District Court for the District of Maryland, seeking to enjoin what they perceived as the State Board's violation of the Maryland Election Law.  *Schlakman et al. v. Md. State Bd. of Elections*, No. 1:16-cv-02968 (D. Md.).  They complained that the State Board was effectively rewriting the statute's candidate filing deadline by including Mr. Sparaco's name on the ballot, and that the State Board's actions had harmed their campaign for the contested seat because they would be forced to "compete in an election against an ineligible candidate."

---

[5] At the time the City Board certified Mr. Sparaco's petition, ELEC. LAW § 6-208(b)(1) provided:

**§ 6-208.  Certification.**

\*\*\*

(b) *Certification*. —   If the chief election official determines that a petition has satisfied all requirements established by law relating to that petition, the chief election official shall certify that the petition process has been completed and shall:
(1) with respect to a petition seeking to place a name of an individual or a question on the ballot, certify that the name or question has qualified to be placed on the ballot[.]

*See* MD. CODE ANN., ELEC. LAW § 6-208(b)(1) (2002, 2010 Repl. Vol., 2015 Supp.).  In 2016, the General Assembly amended ELEC. LAW § 6-208 by adding a new Section 6-208(b), which addressed a ballot issue committee's failure to prove that it had filed a

Appellees' federal suit was dismissed on September 20 because their former attorney was not admitted to the bar of that court. The district judge ordered all pleadings stricken, noting that the clerk had not been authorized to accept any previous filings, and prohibited the clerk from receiving the complaint and "all subsequent filings." *See* D. Md. Loc. Adm. R. 101.1(a), (b)(i), (ii), 102.1(a)(i) (D. Md.).

The action before us was docketed on September 20 in the Circuit Court for Anne Arundel County.[6] Appellees contested the Boards' actions pursuant to ELEC. LAW §§ 6-209 and 12-202(a). In an eight-count complaint, they sought declaratory and injunctive relief, as well as the issuance of a writ of mandamus and a temporary restraining order which would "require that [Appellants] remove the name of Dan Sparaco from any and all ballots to be distributed to voters in Baltimore City Councilmanic District No. 12 for the 2016 General Election." On September 20, Appellees' attorney notified counsel for the Boards that they would be filing a motion for a "TRO/preliminary injunction" in the Circuit Court.[7] Appellees served the Boards' counsel with the TRO motion and accompanying documents on September 21.

---

campaign finance report, and by reenacting, without substantive change, former Section 6-208(b) to be renumbered as Section 6-208(c). *See* 2016 Md. Laws Ch. 725, 726.

[6] Appellees attempted to file on September 19, but their electronic filing was not processed. On September 16, 2016, Appellees had also filed in the Circuit Court for Anne Arundel County an alternate petition for judicial review of the City Board's action. *In the Matter of Ian Schlakman et al.*, No. C-02-CV-16-002910. *See* MD. CODE ANN., STATE GOV'T § 10-222 (1984, 2014 Repl. Vol., 2016 Supp.); Md. Rule 7-202. That action was dismissed on October 19, 2016.

[7] Maryland Rule 15-504 governs temporary restraining orders and provides in relevant part:

On September 22, 2016, the Circuit Court issued the temporary restraining order that is the subject of this appeal. The court found that there were "no material facts in dispute." The court also concluded:

> 3. [The] Court finds that Plaintiffs, registered voters and candidates for the Baltimore City Council in Councilmanic District No. 12, have raised a substantial question concerning whether Defendants are violating Maryland law by their including the name of Dan Sparaco as a candidate for Baltimore City Council in Councilmanic District No. 12 on ballots to be distributed to voters for the 2016 General Election. [The] Court further finds that the Defendants' actions, unless restrained, may act in contravention of the Plaintiffs' claimed rights before this Court has had the opportunity to determine those rights and effectively moot this case. [The] Court finds that this outcome would harm Plaintiffs' legitimate interests. The Court further finds that this harm will be immediate, substantial, and irreparable.
>
> * * *
>
> 5. Accordingly, Linda H. Lamone, in her official capacity as State Administrator, Maryland State Board of Elections, and

---

**Rule 15-504. Temporary restraining order.**
(a) **Standard for Granting.** A temporary restraining order may be granted only if it clearly appears from specific facts shown by affidavit or other statement under oath that immediate, substantial, and irreparable harm will result to the person seeking the order before a full adversary hearing can be held on the propriety of a preliminary or final injunction.
(b) **Without Notice.** A temporary restraining order may be granted without written or oral notice only if the applicant or the applicant's attorney certifies to the court in writing, and the court finds, that specified efforts commensurate with the circumstances have been made to give notice. Before ruling, the judge may communicate informally with other parties and any other person against whom the order is sought or their attorneys.

7

Armstead B. C. Jones, Sr., in his official capacity as Election Director, Baltimore City Board of Elections (collectively "Defendants") are ORDERED to remove the name of Dan Sparaco from any and all ballots to be distributed to voters in Baltimore City Councilmanic District No. 12 for the General Election and ENJOINED from distributing to voters any ballot containing the name of Dan Sparaco as a candidate for election in the 2016 General Election. FURTHER, those working under Defendants' direction and in concert with them shall be and hereby are ENJOINED temporarily to take any action to frustrate or impede this relief.

This appeal and our grant of certiorari followed. *Schlakman*, 450 Md. at 214, 147 A.3d at 393 (2016).

## DISCUSSION
### *Standards of Review*

We review the Circuit Court's decision to issue a temporary restraining order for an abuse of discretion. *See Schisler v. State*, 394 Md. 519, 534, 907 A.2d 175, 185 (2006). *See generally LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 300–01, 849 A.2d 451, 458–59 (2004) (reviewing a preliminary injunction). To the extent the Circuit Court's exercise of discretion is based on an interpretation of law, that aspect of the ruling below is reviewed *de novo*, because "even with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal principles." *LeJeune*, 381 Md. at 301, 849 A.2d at 459 (citation and internal quotation marks omitted); *see Cabrera v. Penate*, 439 Md. 99, 106, 94 A.3d 50, 54 (2014) (*de novo* review of circuit court's interpretation of Election Law Article). We review the factual findings of the lower court for clear error. *See Toms v. Calvary Assembly of God, Inc.*, 446 Md. 543, 551, 132 A.3d 866, 871 (2016) (citations and quotation marks omitted).

8

The above standards of review govern appellate review of all interlocutory injunctions. *Cf. Fritszche v. Md. State Bd. of Elections*, 397 Md. 331, 340, 916 A.2d 1015, 1020 (2007) (addressing four factors to determine whether TRO should issue); *Schisler*, 394 Md. at 534, 907 A.2d at 175 (applying the four factors in review of TRO); *In re Kimmer*, 392 Md. 251, 260 n. 13, 896 A.2d 1006, 1012 n. 13 (2006) (stating that to determine "whether to issue a temporary restraining order, the trial court must examine and find four factors[.]"). "[W]here the issue is whether a party is precluded by laches from challenging an action of another party, we shall review the trial court's ultimate determination of the issue *de novo*[.]" *Liddy v. Lamone*, 398 Md. 233, 248–49, 919 A.2d 1276, 1286–87 (2007).

### Timeliness of Challenge

Appellees sought review of the City Board's actions pursuant to ELEC. LAW §§ 6-209(a) and 12-202. Appellants initially responded that Appellees may not rely on ELEC. LAW § 6-209 to attack the candidacy of Mr. Sparaco.

Title 6 of the Election Law Article governs petitions, including petitions in support of a candidate's nomination. *See* ELEC. LAW § 6-208(c)(1). Subtitle 2 governs the content of petitions, determinations as to their format or the sufficiency of local law or charter amendment on a ballot, validation of signatures and affidavits of petition circulators, the processes for filing, and the final determination of the sufficiency of the petitions. Further, Subtitle 2 affords judicial review to challenge determinations with

9

respect to petitions and time limitations for filing for judicial review. *See* ELEC. LAW §§ 6-201–6-210. ELEC. LAW § 6-209 provides:

**§ 6-209. Judicial Review.**

(a) *In general –*

(1) A person aggrieved by determinations made under §6-202, § 6-206, or § 6-208(a)(2) of this subtitle may seek judicial review:

(i) in the case of a statewide petition, a petition to refer an enactment of the General Assembly pursuant to Article XVI of the Maryland Constitution, or a petition for a congressional or General Assembly candidacy, in the Circuit Court for Anne Arundel County; or

(ii) as to any other petition, in the circuit court for the county in which the petition is filed.

(2) The court may grant relief as it considers appropriate to assure the integrity of the electoral process.

(3) Judicial review shall be expedited by each court that hears the cause to the extent necessary in consideration of the deadlines established by law.

(b) *Declaration relief. –* Pursuant to the Maryland Uniform Declaratory Judgments Act and upon the complaint of any registered voter, the circuit court of the county in which a petition has been or will be filed may grant declaratory relief as to any petition with respect to the provisions of this title or other provisions of law.

By its terms, ELEC. LAW § 6-209 applies to determinations made with respect to the validity or sufficiency of petitions and their supporting documentation, and does not address the specific qualifications or eligibility of a candidate. Moreover, even if Title 6 provided an avenue to Appellees for their challenge to Mr. Sparaco's candidacy, their

10

complaint was filed in the wrong court and came too late.  *See* ELEC. LAW § 6-209(a)(1)(ii).  ELEC. LAW § 6-210 sets forth various deadlines in the petition process, and provides the following deadlines for seeking judicial review:

> **§ 6-210.  Schedule of process.**
>
> * * *
>
> (e) *Judicial review* —  (1) Except as provided in paragraph (2) of this subsection, any judicial review of a determination, as provided in § 6-209 of this subtitle, shall be sought by the 10th day following the determination to which the judicial review relates.
> (2)(i) If the petition seeks to place the name of an individual or a question on the ballot at any election, except a presidential primary election, judicial review shall be sought by the day specified in paragraph (1) of this subsection or the 63rd day preceding that election, whichever day is earlier.
> (ii) If the petition seeks to place the name of an individual on the ballot for a presidential primary election in accordance with § 8-502 of this article, judicial review of a determination made under § 6-208(a)(2) of this subtitle shall be sought by the 5th day following the determination to which the judicial review relates.

Although the City Board certified Mr. Sparaco's petition pursuant to then ELEC. LAW § 6-208(b)(1), ELEC. LAW § 6-209 does not provide a remedy for Appellees to challenge Mr. Sparaco's candidacy based on their assertion that he failed to adhere to the  deadlines for filing his candidacy documents.  Appellees were required to pursue their challenge pursuant to the statutory provision, ELEC. LAW § 12-202, that was enacted to provide relief "from any act or omission relating to an election[.]"

Section 12-202 of the Election Law Article governs judicial challenges to certain irregularities in relation to an election; it provides "judicial redress for any act or

11

omission that violates the Election Law Article[.]" *Ross v. State Board of Elections*, 387

Md. 649, 667–68, 876 A.2d 692, 703 (2005). It "is the mechanism for challenging the

qualifications of a candidate seeking election[.]" *Cabrera v. Penate*, 439 Md. at 109, 94

A.3d at 56. Elec. Law § 12-202(b) by its terms, affords a party the opportunity to

challenge irregularities as elaborated in Elec. Law § 12-202(a) by "seek[ing] judicial

relief . . . in the appropriate circuit court[,]" and constitutes general judicial review

authority when no other Election Law provisions apply. *Cf. Citizens Against Slots at the*

*Mall v. PPE Casino Resorts Maryland, LLC,* 429 Md. 176, 190, 55 A.3d 496, 505 (2012)

(Elec. Law §§ 12-201 through 12-203 authorize judicial review and appeal in absence of

other judicial review provisions in Election Law Article).

Section 12-202 provides:

> **§ 12-202.  Judicial challenges.**
>
> (a) *In general.* —  If no other timely and adequate remedy is
> provided by this article, a registered voter may seek judicial
> relief from any act or omission relating to an election,
> whether or not the election has been held, on the grounds that
> the act or omission:
>
> (1) is inconsistent with this article or other law applicable to
> the elections process; and (2) may change or has changed the
> outcome of the election.
>
> (b) *Place and time of filing.* —  A registered voter may seek
> judicial relief under this section in the appropriate circuit
> court within the earlier of:
>
> (1) 10 days after the act or omission or the date the act or
> omission became known to the petitioner; or (2) 7 days after
> the election results are certified, unless the election was a
> gubernatorial primary or special primary election, in which

case 3 days after the election results are certified.[8]

Relying on ELEC. LAW § 12-202(b)(1), Appellants contend that Appellees acted too late to seek declaratory, injunctive and mandamus relief in the circuit court because their complaint fell outside of the ten-day "window" afforded by ELEC. LAW § 12-202(b)(1) for a challenger to seek a remedy for acts or omissions relating to an election. They also aver that Appellees' challenge is foreclosed by laches.

Seeking to avoid procedural default, Appellees insist that the filing of their federal action "within 10 days of their becoming aware" of the allegedly improper certification of Mr. Sparaco as a candidate for the District Twelve seat tolled the running of the Section 12-202(b)(1) limiting period. Appellees accordingly urge this Court to credit their filing in the United States District Court under the savings provision of Maryland Rule 2-101(b), which elaborates when a federal filing may be deemed to be timely filed in our courts. They also maintain that their filing for a writ of mandamus excuses any delay in their judicial challenge because the limitations period set forth in ELEC. LAW § 12-202(b) does not apply.

As noted, ELEC. LAW § 12-202(b)(1) requires a challenge to be made "10 days after the act or omission or the date the act or omission became known to the petitioner[.]" Yet, "[b]ecause the action [before us is] an equitable one, however, laches,

---

[8] In 1998, as part of the General Assembly's comprehensive revision of the Elections Law, the General Assembly reduced the limitations period for bringing a pre-election challenge from 20 to 10 days. 1998 Md. Laws Ch. 585, § 2 at 2857. The Election Law was also amended to set the deadline for filing a declaration of intent on July 1, the deadline for filing a certificate of candidacy. 1998 Md. Laws Ch. 585, § 2 at 2742.

13

rather than direct application of the statutory time period, [is] the proper focus." *Fraternal Order of Police v. Montgomery County*, 446 Md. 490, 509, 132 A .3d 311, 332 (2016) (discussing *Ross*, 387 Md. at 668–70, 876 A.2d at 704–05). *See also* Md. Rule 2-323 (recognizing laches as an affirmative defense). Notwithstanding the equitable nature of Appellees' claims and the relief they seek, we may gauge their delay against the statutory limitations period because "courts sitting in equity will apply statutory time limitations in determining, at least as an outside limit, whether laches has run." *Fraternal Order of Police*, 446 Md. at 509, 132 A.3d at 322 (citing *Ross*, 387 Md. at 670, 876 A.2d at 704–05). In *Salisbury Beauty Schools v. State Board of Cosmetologists*, we said:

> [L]aches is an inexcusable delay, without necessary reference to duration, in the assertion of a right, and unless mounting to the statutory period of limitations, mere delay is not sufficient to constitute laches, if the delay has not worked a disadvantage to another.

*Salisbury Beauty Schools v. State Board of Cosmetologists*, 268 Md. 32, 63, 300 A.2d 367, 385 (1973). The following observation by this Court in *Stevens v. Bennett*, 234 Md. 348, 199 A.2d 221 (1964) comes to mind:

> The authorities indicate that even when the remedy for a claimed right is only in equity the period of limitations most nearly apposite at law will be invoked by an equity court, provided there is not present a more compelling equitable reason—such as fraud or other inequitable conduct which would cause injustice if the bar were interposed—why the action should not be barred. 34 Am. Jur. *Limitation of Actions* Sec. 60; 53 C.J.S. *Limitations of Actions* § 36; 30 C.J.S. Equity § 131; Wood, LIMITATIONS (4th Ed.), Sec. 59; 79 U. OF PA. L. REV. 341. This Court has suggested that it is in accord. *Wilhelm v. Caylor*, 32 Md. 151, 157-158. Judge Henderson, for the Court, said in *Berman v. Leckner*, 188 Md.

321, 328, 52 A.2d 464, 467: "There is no doubt that limitations will apply by analogy, to proceedings in equity as well as to actions at law, particularly where the jurisdiction is concurrent."

*Stevens*, 234 Md. at 351, 199 A.2d at 223–24. [9]

This Court has "consistently . . . adhered to the principle that there is no inflexible rule as to what constitutes, or what does not constitute, laches; hence, its existence must be determined by the facts and circumstances of each case." *Ross*, 387 Md. at 669, 876 A.2d at 704 (citations, internal quotation marks and brackets omitted). As noted above, a statutory limitations period, such as that provided by ELEC. LAW § 12-202(b)(1), provides a benchmark for the application of laches, as it will, against which this Court can assess whether the Appellees' delay in filing in the Circuit Court was unreasonable and whether it prejudiced the interests of Appellants. *See Liddy*, 398 Md. at 242, 919 A.2d at 1282–83.

We shall hold that Appellees' judicial challenge is barred as a matter of law by laches. Even granting, *arguendo*, that they did not learn of the City Board's certification of Mr. Sparaco's candidacy until August 15, 2016, their challenge under ELEC. LAW § 12-202(a) came too late because they did not file the instant action in the Circuit Court for Anne Arundel County until September 20, 2016, when their complaint was docketed

---

[9] *See generally*, Gail L. Heriot, *A Study in the Choice of Forum: Statutes of Limitations and the Doctrine of Laches*, 1992 BYU L. REV. 917, 952–53, 967 (1992) (noting convergence in cases between applications of statutes of limitations and laches).

by the clerk and, on this record, their delay was unreasonable and prejudicial to Appellants and the election process.[10]

At the outset, we discern no basis on this record to hold that Appellees' obligation to file in the appropriate circuit court, as instructed by ELEC. LAW § 12-202(b)(1) was tolled by their failed attempt to file suit in the United States District Court. The savings provision of Maryland Rule 2-101, as pertinent here, reads:

**Rule 2-101.  Commencement of action.**

(a) **Generally.**  A civil action is commenced by filing a complaint with a court.

(b)  **After Certain Dismissals by a United States District Court or a Court of Another State.**  Except as otherwise provided by statute, if an action is filed in a United States District Court or a court of another state within the period of limitations prescribed by Maryland law and that court enters an order of dismissal (1) for lack of jurisdiction, (2) because the court declines to exercise jurisdiction, or (3) because the action is barred by the statute of limitations required to be applied by that court, an action filed in a circuit court within 30 days after the entry of the order of dismissal shall be treated as timely filed in this State.

Maryland Rule 2-101(b) offers no support for Appellees' assertion that the instant lawsuit in the Circuit Court was tolled by their filing in the United States District Court.

---

[10] Appellants suggest that Appellees were on notice of the City Board's certification of Mr. Sparaco's candidacy as early as August 2, 2016, when the State Board posted the names of the qualified candidates on its website. The Appellants, nevertheless, "for purposes of [their] brief," assume that Appellees were unaware of Mr. Sparaco's eligibility of any "act or omission" by the Boards until August 15, 2016, when Mr. Sparaco dismissed his federal lawsuit, thus, according to Appellees, making them aware for the first time that Appellants had changed their position as to the correct filing deadline for filing the relevant candidacy documents.

16

The federal court's disposition of Appellees' federal action does not fit within the relevant factors enumerated in Rule 2-101(b). That court did not dismiss the federal suit for "lack of jurisdiction," because that court did not have the occasion to consider the issue of jurisdiction. *See* Md. Rule 2-101(b)(1). Nor did the federal court "decline to exercise jurisdiction" in the first instance. *See* Md. Rule 2-101(b)(2). *See generally* 28 U.S.C. § 1367(c) (enumerating bases for a federal court's decision to "decline" to exercise jurisdiction). Instead, the district judge had no occasion to address the merits of Appellees' federal complaint because the clerk was ordered not to accept the complaint for filing[11]:

> For the reasons stated at today's teleconference, Plaintiffs' Complaint is STRICKEN and DISMISSED without prejudice. Plaintiffs' counsel has failed to comply with Local Rule 101.1(b)(i) and (ii) in that she is not a member of the bar of this Court and an active member in good standing has not moved for her admission *pro hac vice*. Accordingly, the Clerk of the Court was prohibited from accepting Plaintiffs' Complaint and all subsequent filings.

Because Md. Rule 2-101(b) was never triggered, the consequences of Appellees' untimely judicial challenge in Circuit Court will not be alleviated by application of the savings provision of Md. Rule 2-101(b).

---

[11] Federal courts are authorized to promulgate local rules relating to the appearance of counsel. *See Hall v. Southwest Airlines Co.*, 282 F.R.D. 419, 419 (N.D.Tex. 2012) (citing 28 U.S.C. § 1654; 28 U.S.C. § 2071; FED. R.CIV. PRO. 83). The effect of the federal court's dismissal of Appellees' attempted lawsuit was that their action was a nullity. *Cf. Finch v. LVNV Funding LLC*, 212 Md. App. 748, 755, 71 A.3d 193, 197 (stating proceedings in suit by person not entitled to practice law a nullity and recognizing judgment void), *cert. denied, sub nom. LVNV Funding v. Finch & Dorsey*, 435 Md. 266, 77 A.3d 1084 (2013).

17

We turn to Appellees' claim that because they also sought a writ of mandamus, the limitations period set forth in ELEC. LAW § 12-202(b)(1) does not apply to bar their judicial challenge to the City Board's certification of Mr. Sparaco. The short answer to Appellees' argument is that laches operates to bar their mandamus claim as well. We do not agree with Appellees that, by seeking a writ of mandamus, they can, in every case, circumvent the time constraints of ELEC. LAW § 12-202(b)(1) by pursuing an alternate challenge to an election board's actions.[12] Again, "if the equities so require," courts are at liberty "to asses the facts of a purely equitable action independent of the statutory time limitations applicable at law." *Ross*, 387 Md. at 670, 876 A.2d at 705. We again stress, however, that "any claim against a state electoral procedure must be expressed expeditiously." *Liddy*, 398 Md. at 250, 919 A.2d at 1287 (citation omitted). Accordingly, our analysis as to reasonableness of the delay and resulting prejudice in the case before us is informed by this precept, as well as the delay as measured against the "benchmark" limitations period for election challenges established by the General Assembly in ELEC. LAW § 12-202(b).

---

[12] As a matter of law, mandamus relief would not obtain where a remedy at law was available—the specific ability to challenge election irregularities pursuant to the judicial challenge provision of ELEC. LAW § 12-202(a). We have emphasized that "judicial review is properly sought through a writ of mandamus where there [is] no statutory provision for hearing or review and where public officials [are] alleged to have abused the discretionary powers reposed in them." *Goodwich v. Nolan*, 343 Md. 130, 146, 680 A.2d 1040, 1048 (1996) (footnote, citation and internal quotation marks omitted). Certainly, mandamus is often applied in election cases, and the remedies sought through mandamus are often congruent with the equitable relief sought in elections cases.

18

Appellees have offered no valid explanation as to why they waited until September 20 to cause their judicial challenge to be docketed in the Circuit Court. To be sure, they attempted to file in the United States District Court, and this effort was both unsuccessful, because counsel had not been admitted to practice there, and did not comport with the explicit requirement of ELEC. LAW § 12-202(b) which mandates that a challenge be filed in the circuit court. It also appears, according to Appellants, that Appellees waited until September 14, 2016, to serve Appellants with their federal motion for a temporary restraining order. This delay "must be juxtaposed against [their] duty to petition for redress without delay when the election approaches[.]" *Ross*, 387 Md. at 672, 876 A.2d at 705.

With respect to prejudice, Appellants point out that the delay in not filing until September 19, or September 20 when Appellees' case was docketed by the clerk, preceded "only days before the scheduled mailing of absentee ballots to military and overseas voters." Appellees counter that they filed this action before any ballots had been sent out, and speculate that "even if those ballots had been mailed they would have been few in number."

We are not convinced that the equities favor Appellees in light of their eleventh hour challenge. Although Appellees filed their action in the Circuit Court seven weeks before the General Election, the election process had begun in earnest. Moreover, even though Appellees claim not to have become aware of Mr. Sparaco's candidacy until August 15, 2016, when he dismissed his federal lawsuit, the State Elections Board had by

19

that time listed him as an "active" candidate on August 2. By August 4, Mr. Sparaco had provided enough signatures to be placed on the ballot. On August 31, his name was included on proofs of the 2016 General Election ballot which were posted on the State Board's website. In their answer to the complaint, Appellees indicated:

> The defendants admit that federal law requires that, if an absentee military or overseas citizen voter has requested mail delivery of an absentee ballot for the 2016 general election before September 24, 2016, the deadline for mailing such ballots is September 24. The defendants further state that the State Board had arranged to have absentee ballot packages assembled and mailed on September 21–22 and that counsel for the plaintiffs had been advised of that schedule.

In view of this, the following observation by the United States Court of Appeals for the Seventh Circuit is apposite. Affirming the denial of a preliminary injunction sought by Ralph Nader to compel the State of Illinois to place his name on the Presidential ballot, the court noted:

> By waiting as long as he did to sue, and despite the strenuous efforts by the district court and this court to expedite the litigation, Nader created a situation in which any remedial order would throw the state's preparations for the election into turmoil. Absentee ballots have already been mailed to voters who will be overseas on election day, see 42 U.S.C. § 1973ff–2(e)(2), and the remaining absentee ballots will be mailed on September 23.

*Nader v. Keith*, 385 F.3d 729, 736 (7th Cir. 2004). We could not agree more with the observation by the Ohio Supreme Court in *Blankenship v. Blackwell*, 817 N.E.2d 382, 387 (Ohio 2004), when that Court emphasized that "[o]ur consistent requirement that

expedited election cases be filed with the required promptness is not simply a technical nicety." (citations and internal quotation marks omitted).

We cautioned in *Ross* that we would not craft a *per se* rule to apply laches where an election challenge falls outside the limitations period set by the statute. *Ross*, 387 Md. at 671, 876 A.2d at 705. We shall not do so here. Nevertheless, the delay occasioned by Appellees' failure to file in the Circuit Court until their case was docketed on September 20, coming as it does over a month after August 15, 2016, the date that they maintain was their first notice of Mr. Sparaco's certification, comes close to that mark. Appellees have not explained this delay, or explained why they did not institute a parallel action in the Circuit Court within the time limits mandated by ELEC. LAW § 12-202(b).

Although we conclude that Appellees' circuit court challenge to the Boards' actions is barred as untimely and foreclosed by the operation of laches, we also conclude, in the alternative, that their entitlement to the relief they sought fails because Appellees cannot succeed on the merits, regardless of their theory of action or the nature of the remedy they seek. A temporary restraining order will be set aside if the party seeking such interlocutory relief will not succeed on the merits of the dispute. *Fuller v. Republican Cent. Committee of Carroll Cnty.*, 444 Md. 613, 635, 120 A.3d 751, 764 (2015). A fair reading of the Election Law Article reveals that Mr. Sparaco was not required to file either a declaration of intent or certificate of candidacy on February 3, 2016, as Appellees insist.

21

The principles of statutory interpretation are well-established:

> We have stated the controlling principles of statutory construction so often that only the briefest exposition is necessary. Our predominant mission is to ascertain and implement the legislative intent, which is to be derived, if possible, from the language of the statute (or Rule) itself. If the language is clear and unambiguous, our search for legislative intent ends and we apply the language as written and in a commonsense manner. We do not add words or ignore those that are there. If there is any ambiguity, we may then seek to fathom the legislative intent by looking at legislative history and applying the most relevant of the various canons that courts have created.

*Downes v. Downes*, 388 Md. 561, 571, 880 A.2d 343, 349 (2005) (citations omitted); *see*

*Drew v. First Guar. Mort. Corp.*, 379 Md. 318, 327, 842 A.2d 1, 6 (2003) (ascertaining

legislative intent is the principal goal of statutory interpretation). We examine the

legislation as a whole, reviewing the language and context of the provisions at issue. As

we recently emphasized:

> We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope....In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense.

*CashCall, Inc. v. Md. Comm'r of Fin. Regulation,* 448 Md. 412, 431, 139 A.3d 990, 1002 (2016) (quoting *Gardiner v. State*, 420 Md. 1, 8–9, 20 A.3d 801, 806 (2011)).

The parties vigorously dispute the meaning of those provisions of the Election Law Article that pertain to the filing of certificates of candidacy and declarations of intent by prospective candidates who seek a nomination by petition. Appellees insist that the recent amendments to the Election Law Article, specifically ELEC. LAW § 5-703, evince the General Assembly's intent to require all candidates, including petition candidates and those nominated by non-principal political parties, to file by the same "Candidacy Filing Deadline," which they insist was February 3, 2016, the pre-primary filing deadline set forth in ELEC. LAW § 5-303(a). Appellants counter that the language of the statute militates in favor of the Boards' interpretation that the deadlines for filing the declaration of intent and certificate of candidacy for a nomination by petition are as set forth in ELEC. LAW § 5-703(d)(1) – "not later than 5 p.m. on the first Monday in August in the year of the general election for the office."

For the reasons that follow, we conclude that the plain language of the Election Law provisions at issue supports Appellants' view that a candidate such as Mr. Sparaco was not required to make the required filings until the first Monday in August preceding the General Election.[13] We therefore agree with Appellants and explain.

---

[13] This Court has "long held to the view that a reviewing court should give deference and 'considerable weight' to the interpretation of a statute by the agency created to administer it." *Montgomery Cnty. v. Glenmont Hills Assocs. Privacy World at Glenmont Metro Ctr.*, 402 Md. 250, 271, 936 A.2d 325, 337 (2007), *cert. denied*, 553 U.S. 1102, 128 S. Ct. 2914, 171 L.Ed.2d 858 (2008). Given the clarity of the statutory language, we need not

For present purposes, the operative provisions of the Election Law Article are set forth within Subtitles 3 and 7 of Title 5 of the statute. Title 5 broadly governs candidates. Subtitle 3, ELEC. LAW §§ 5-301 – 5-305, relates to the required certificates of candidacy; and Subtitle 7, ELEC. LAW §§ 5-701 – 5-706, addresses nominations.

Subtitle 3 governs the substantive elements of a prospective candidate's certificate of candidacy, such as the information to be provided, how and where that certificate must be filed, and other requirements such as a filing fee and financial disclosures.

ELEC. LAW § 5-301, the introductory provision for Subtitle 3, provides in relevant part:

> **§ 5-301. In general.**
>
> (a) *In general*. — An individual may become a candidate for a public or party office only if:
>
> (1) the individual files a certificate of candidacy in accordance with this subtitle; and
>
> (2) the individual does not file a certificate of withdrawal under Subtitle 5 of this title.

address Appellees' arguments with respect to the application of constitutional avoidance by the State Board, or address inconsistent interpretations made by the State Board at various times. Appellees draw our attention to a memorandum that summarizes Senate Bill 204, which amended relevant portions of the Election Law Article in 2015. *See* 2015 Laws of Maryland, Ch. 332. Neither party disputes that this appears to be an early interpretation of the Election Law Article by the State Board. The State Board most certainly misapprehended the correct deadline, as was shown by the Memorandum and by the fact that until August 26, 2016, its website misstated the deadline for filing the documents at issue as February 3, 2016. Our analysis does not require us to dwell on the State Board's shifting interpretations of the correct deadline date. Because the provisions of the statute are clear and unambiguous with respect to the deadline when the petition and non-affiliated party candidates must file their declaration of intent, our inquiry ends there.

Section 5-303 addresses filing deadlines, as Appellees maintain, and indeed relevantly provides for a pre-primary filing deadline:

**§ 5-303. When filed.**

(a) In general. —  Except as provided in subsections (b) and (c) of this section:

(1) in the year in which the Governor is elected, a certificate of candidacy shall be filed not later than 9 p.m. on the last Tuesday in February in the year in which the primary election will be held; and

(2) for any other regularly scheduled election, a certificate of candidacy shall be filed not later than 9 p.m. on the Wednesday that is 83 days before the day on which the primary election will be held.

This ELEC. LAW § 5-303(a)(2) pre-primary deadline for filing a certificate of candidacy does not govern the filing deadline for a candidate who seeks nomination by petition.  That deadline is set by Subtitle 7.  The introductory provision for Subtitle 7 elaborates three avenues for securing a nomination for a place on a ballot, depending on whether the prospective candidate seeks nomination by a political party that engages in the primary process, a party that does not use a primary, or a candidate who must secure enough signatures on a nominating petition:

**§ 5-701.  In general**

Nominations for public offices that are filled by elections governed by this article shall be made:

(1) by party primary, for candidates of a principal political party;

25

(2) by petition, for candidates not affiliated with any political party; or

(3) in accordance with the constitution and by-laws of the political party, for candidates of a political party that does not nominate by party primary.

ELEC. LAW § 5-703, in turn, governs the nomination of a petition candidate such as Mr. Sparaco, and pertinently reads:

§ 5–703. **Nomination by petition.**

(a) *Scope.* — Except for a candidate for a nonpartisan county board of education, this section applies to any candidate for public office subject to this title.

(b) *In general.* — A candidate for public office may be nominated by petition under this subtitle if the candidate is not affiliated with any political party.

(c) *Declaration of intent.* — (1) A candidate for public office who seeks nomination by petition shall file a declaration of intent to seek nomination by petition.

(2) The declaration of intent shall be filed with the board at which the candidate files a certificate of candidacy under Subtitle 3 of this title.

(3) The declaration of intent shall be filed as follows:

* * *

(ii) in a year in which the President and Mayor of Baltimore City are elected, by the date and time specified for a candidate to file a certificate of candidacy;

* * *

(d) *Certificate of Candidacy.* — (1) A candidate for public office who seeks nomination by petition shall file a certificate of candidacy not later than 5 p.m. on the first Monday in

26

August in the year of the general election for the office.

Appellees aver that Mr. Sparaco's filing deadline for the certificate of candidacy, and thus the declaration of intent, must be dictated by ELEC. LAW § 5-303(a)(2), because, they maintain, the "language of [ELEC. LAW] § 5-703(3)(ii) clearly and unambiguously set[s] the deadline for filing a declaration of intent for an independent candidate [presumably a petition candidate] who wished to seek election in 2016 at February 3, 2016." To them, "the date and time specified for a candidate to file a certificate of candidacy[,]" can only be the deadline set forth at ELEC. LAW § 5-303(a)(2).

Essentially, Appellees brush aside the clear language of ELEC. LAW § 5-703(d), which sets the filing deadline in August. To be sure, ELEC. LAW § 5-703(d)(2) dictates that a candidate by petition must comply with certain substantive filing requirements as to the content of the certificate of candidacy and place of filing, as those requirements are set forth in Subtitle 3 regardless of the type of candidate.[14] Contrary to Appellees' argument, however, ELEC. LAW § 5-703(d)(1) explicitly sets the filing deadline by a candidate such as Mr. Sparaco, who sought nomination by petition. This is so because ELEC. LAW § 5-703(d)(2), while referring to Subtitle 3's substantive requirements, does not incorporate that subtitle's pre-primary filing deadline, but instead retains the filing deadline for petition candidates within Subtitle 7, for, with emphasis added, it provides:

> (2) **Except for the time of filing**, the certificate of candidacy of a candidate who seeks nomination by petition shall comply with the requirements for a certificate of candidacy under

---

[14] For example, ELEC. LAW § 5-304 dictates the manner of filing, such as the content, § 5-304(c), and filing fee and financial disclosures. ELEC. LAW § 5-304(d).

27

Subtitle 3 of this title.

ELEC. LAW § 5-703(f) further confirms the importance of the August filing deadline:

> (f) *Time and place for filing signatures.* — (1) Except as provided in paragraph (2) of this subsection, a petition that contains the required number of signatures specified under subsection (e)(1) of this section shall be filed with the appropriate board by 5 p.m. on the first Monday in August in the year in which the general election is held.
>
> (2) In a special election to fill a vacancy in the office of Representative in Congress, a petition that contains the required number of signatures shall be filed with the State Board by 5 p.m. on the day of the special primary election.[15]

Moreover, the interplay between the two Subtitles is further demonstrated by ELEC. LAW § 5-301(d), which, with emphasis added, dictates:

> (d) *Petition candidates*. — A candidate who seeks nomination by petition shall file a certificate of candidacy as **provided in § 5-703 of this title**.

In sum, while Subtitle 3 outlines certain formal requirements for all candidates, petition candidates must meet the filing deadline set forth in Subtitle 7. Mr. Sparaco met that deadline.

Although the language of the statute is clear, a brief view of legislative history of relevant provisions of the Election Law Article provides a context for our holding and confirms our interpretation of the statute. We have said that "the resort to legislative

---

[15] ELEC. LAW § 5-703.1, which governs nominations by political parties of candidates without conducting a party primary, likewise mandates a deadline "not later than 5 p.m. on the first Monday in August in the year of the general election for the office." ELEC. LAW § 5-703.1(d)(1). ELEC. LAW § 5-703.1(d)(2) also refers to Subtitle 3, but, as with

28

history is a confirmatory process; it is not undertaken to contradict the plain meaning of the statute." *Mayor & City Council of Balt. v. Chase*, 360 Md. 121, 131, 756 A.2d 987, 993 (2000). *See also Comm'r of Fin. Regulation v. Brown, Brown, & Brown, P.C.*, 449 Md. 345, 361, 144 A.3d 666, 676 (2016).

The 1982 Amendments to the Election Law are instructive. In 1981, the Election Law dictated an early filing deadline for all but write-in candidates, and provided that

> [e]xcept for certificates of candidacy filed by write-in candidates and as otherwise provided herein [factors not relevant here], certificates of candidacy shall be received and filed in the office of the appropriate board not later than nine p.m. on the Monday which is ten weeks or seventy days before the day on which the primary election should be held under the primary election law.

MD. CODE (1957, 1976 Repl. Vol., 1981 Supp.), Art. 33, § 4A-3.[16] Thus, a petition candidate was required to file a certificate of candidacy on the pre-primary date, well before the general election.

In 1982, the General Assembly amended Article 33, §§ 4A-1 and 7-1 to move back the certificate of candidacy filing deadline for petition candidates. 1982 Md. Laws Ch. 446. As amended, Article 33, § 4A-3 provided:

> ### § 4A-3.  When filed.
>
> Except for certificates of candidacy filed by petition or write-in candidates and as otherwise provided herein, certificates of candidacy shall be received and filed in the office of the

---

ELEC. LAW § 5-703(d)(2), also reserves the August deadline for filing by these candidates.

[16] In 1982, § 4A of the Election Law governed "Certificates of Candidacy."

appropriate board not later than nine p.m. on the Monday which is ten weeks or seventy days before the day on which the primary election should be held under the primary election law. [17]

MD. CODE (1957, 1976 Repl., 1982 Supp.), Art. 33 § 4A-3.

In crafting the 1982 Amendments to the relevant provisions of the Election Law, which adjusted the filing deadline for petition candidates to be closer to the General Election, the General Assembly considered correspondence from both the Attorney General and the Assistant Attorney General who was the Legislative Counsel to the General Assembly, who each cautioned that early, pre-primary, filing deadlines in certain cases were viewed suspiciously by the federal courts. Attorney General Stephen H. Sachs informed Governor Harry Hughes that House Bill 1616 would amend the relevant provisions of the Election Law, so the statute would be consistent with rulings by the federal courts. He wrote:

> [House Bill 1616] would require candidates seeking nomination by petition in presidential election years to file their certificate of candidacy by the first Monday in August. This is consistent with the decision in <u>Anderson v. Morris</u>, 500 F. Supp. 1095 (D. Md. 1980), <u>aff'd</u> 636 F.2d 55 (4th Cir. 1980)[.]
>
> The only petition candidates required to comply with a pre-primary filing deadline are those running for office in years when a gubernatorial election is held . . . .
>
> Although the United States Supreme Court will once again be considering the constitutionality of pre-primary filing

---

[17] ELEC. LAW § 7-1(b)(1)(i) further provided: "A declaration of intent is not required of any candidate for public office in a year in which the President of the United States is elected." MD. CODE (1957, 1976 Repl., 1982 Supp.), Art. 33 § 7-1(b)(1)(i).

deadlines for independent candidates, see <u>Anderson v. Celebreeze</u>, 664 F.2d 554 (6th Cir. 1981), <u>cert. granted</u> ___ U.S. ___, 50 LW 3975 (May 4, 1982), existing case law would support the constitutionality of a July filing deadline for nonpresidential candidates. See <u>Jenness v. Fortson</u>, 403 U.S. 431 (1970).

Memorandum from Attorney General Stephen H. Sachs to Governor Harry Hughes (May 12, 1982) (maintained in Legislative Bill File – House Bill 1616, 1982). An earlier memorandum, from the Counsel to the General Assembly to the Administrator of the State Administrative Board of Election Laws, was blunt:

> In light of the prevailing precedent in this federal circuit, it is my view that the requirement imposed by the proposed amendments to House Bill 1616 [that would have mandated a pre-primary filing date for declarations of intent for petition candidates] would be unconstitutional, at the very least, as applied to petition candidates in presidential elections years obliged to file a "declaration of intent" by early March.
>
> Maryland's filing deadline for independent candidates has been the subject of frequent litigation over the years . . . . And it can be fairly stated that the State has not fared well in convincing federal courts in this circuit to uphold an early March filing deadline that is uniform for independents and party candidates alike.
>
> * * *
>
> [B]arring unforeseen developments, I do not see how the State can continue to defend in this circuit an early March filing deadline for independent candidates, be it a filing deadline for certificates of candidacy or declarations of intent.

Memorandum from Robert A. Zarnoch, Assistant Attorney General, Counsel to the General Assembly, to Willard A. Morris (March 22, 1982) (maintained in Legislative Bill File – House Bill 1616, 1982).

The legislative history of the 2015 amendments to the Election Law Article does not support Appellees' reading of the statute. Prior to the 2015 amendments, ELEC. LAW §§ 5-703(c)(3)(ii) (2014) and 5-703.1(c)(3)(ii) (2014) required candidates seeking nomination by petition and nomination by a "non-primary" political party each to file a declaration of intent "in a year in which the President is elected, by July 1[.]" Moreover, ELEC. LAW §§ 5-703(d)(1) (2014) and 5-703.1(d)(1) (2014) each imposed a deadline of "5 p.m. on the first Monday in August in the year of the general election for the office[]" for candidates to file a certificate of candidacy. The 2015 amendments to the relevant provisions of the Election Law Article were intended to make the deadlines congruent. As indicated in the *Fiscal Note* prepared for Senate Bill 204, which was proposed and adopted as the final amendments to a number of provisions of the Election Law Article:

> **Bill Summary.** In addition to modifying the primary election date in a presidential election year, the bill also:
>
> * * *
>
> • modifies the deadline for a declaration of intent to be filed by a candidate who seeks nomination by petition or by a nonprincipal political party in a presidential election year to coincide with the deadline for filing a certificate of candidacy.

Maryland General Assembly, Department of Legislative Services, *Fiscal and Policy Note (Revised) – SB 204* at 2 (May 7, 2015). Indeed, as noted above, the deadlines for both declarations of intent and certificates of candidacy now "coincide." The deadline for filing declarations of intent for these types of candidates is by 5 P.M. on the first Monday

in August as stated in ELEC. LAW §§ 5-703(d)(1) and 5-703.1(d)(1).[18]

**Conclusion**

The operative language of the Election Law Article is clear. A candidate who seeks nomination by petition is not required to file a certificate of candidacy or declaration of intent by February 3, 2016. The City and State Boards properly certified and listed Mr. Sparaco as a qualified candidate for the District 12 Council seat. Given the clear language of the Election Law Article, we hold that the filing deadline for Mr. Sparaco was set forth in ELEC. LAW § 5-703(d)(1) to be on August 1, 2016, the first Monday of August prior to the General Election.

It is also clear that the legislative history of the relevant provisions of the Election Law Article comply with our interpretation of the filing deadline in this case. Therefore, it is unlikely that the General Assembly would retreat from the current filing deadline to an earlier deadline and by doing so invite the disapproval long ago predicted by its legal advisor in 1982.

For the above reasons, on October 18, 2016, we vacated the temporary restraining order under review, and remanded the case to the Circuit Court for Anne Arundel County with directions to dismiss the underlying action.

---

[18] Appellees assert that an interpretation of the statute that mandates identical deadlines for both filings "would allow a candidate seeking nomination by petition to file a declaration of intent to run and his certificate of candidacy on the same day, thereby making the declaration of intent useless." We are not persuaded. The candidate need not wait to lodge both filings on the final deadline.